[727 NYS2d 88]

In the Matter of STEPHEN B. LEBOW (Admitted as STEPHEN BOGART LEBOW), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, June 28, 2001

**APPEARANCES OF COUNSEL**

*Vitaly Lipkansky* of counsel (*Thomas J. Cahill,* attorney), for petitioner.

No appearance for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent was admitted to the practice of law in the State of New York by the First Judicial Department on January 15, 1979 as Stephen Bogart LeBow. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department.

On January 22, 1998, the Committee served respondent with an amended notice and statement of charges with regard to three matters in which it was alleged that he neglected legal matters entrusted to him; failed to return the unearned portion of a fee promptly; failed to return a client's property; failed to cooperate in the Committee's investigation; and, made a misrepresentation to the Committee as to actions he purportedly took with regard to one of the matters. Subsequently, after a hearing, the Referee issued a report, dated June 16, 1998, denying respondent's proffer of an answer, sustaining all the charges, and recommending the sanction of disbarment. A Committee Hearing Panel then issued a report, dated January 8, 1999, disaffirming the Referee's report to the extent that he found respondent in default and recommended disbarment. The Panel recommended that respondent be given an opportunity to respond to the charges and that he be temporarily suspended.

By order dated November 12, 1999, this Court granted the Committee's petition to the extent of directing a hearing de novo be held on the charges.

That hearing was held before a new Referee on October 24 and 25, 2000, at which respondent appeared *pro se*. Although the statement of charges alleged 13 counts, at the hearing, the Referee dismissed counts five through thirteen at the request of the Committee and with respondent's consent. At the conclusion of the hearing, the Referee sustained all of the remaining charges, one through four, and immediately proceeded to the sanction stage of the hearing. Thereafter, the Committee recommended imposition of a one-year suspension, respondent did not offer an alternative sanction and, in a report dated December 13, 2000, the Referee adopted the Committee's recommendation of a one-year suspension.

Following oral argument, a Hearing Panel issued a report, dated February 12, 2001, in which three members affirmed the

Referee's findings and sanction recommendation with one member dissenting and recommending a three-year suspension.

The charges at issue concerned respondent's representation of the plaintiff in a personal injury action. Respondent was retained in 1992 and, on December 8, 1993, he filed a summons with notice in Queens County and, shortly thereafter, served the summons on the defendants. On December 28, 1993, the defendants served respondent with a demand for a complaint pursuant to CPLR 3012 (b), which required that a complaint be filed within 20 days of the demand or face dismissal. From 1993 through the winter of 1995, the complainant telephoned respondent four or five times a month inquiring about the status of his case but, in the few instances where respondent returned complainant's phone messages, he told him to wait to see what happened.

In or about January 1995, the plaintiff made an abortive attempt to retain another attorney who had told the complainant he might take over his case. Respondent sent this attorney two letters which included consent-to-change attorney forms for complainant and the attorney to execute, along with a form whereby the incoming attorney was to agree to give one third of any recovery in the case to respondent. Neither complainant nor the attorney signed this letter and, a couple of months later, the attorney told complainant he would not take over the case. Thereafter, between 1995 and 1997, complainant made many calls to respondent, leaving messages, but respondent did not reply to these messages and never again contacted him.

On February 11, 1997, the complainant retained another attorney who sent a letter to respondent's office informing him of the retention, asking respondent to forward the case file to him, and included a consent-to-change attorney form for respondent to sign. Respondent did not answer this letter. The new attorney mailed a duplicate letter to a Bronx address and received a registered mail receipt for this second letter which was signed by respondent on February 25, 1997. Respondent did not reply to this letter. The new attorney mailed three additional letters in May and June 1997; two of which were not returned, all of which were not answered by respondent. In June 1997, the new attorney contacted the defense attorney and discovered that the case had been dismissed, upon plaintiff's default, on March 5, 1997, pursuant to CPLR 3012 (b), for failure to serve a complaint after defendant's demand.

The new attorney sent a letter to respondent on June 23, 1997 to discuss this development, but received no reply.

On August 28, 1997, respondent's client filed a complaint with the Disciplinary Committee. Despite numerous requests for an answer to the complaint and numerous excuses proffered by respondent, the only answer respondent ever provided to the Committee was his answer to the formal charges which he produced for the first time the day of the initial hearing in this case, April 21, 1998. In addition, respondent never provided a copy of complainant's case file and never appeared for a deposition as ordered by a subpoena, explaining that he expected to receive another notice from the Committee in light of his inability to appear on the first scheduled date.

Respondent testified at the hearing before the Referee that he was retained by complainant like a "country lawyer" in order to help the client find another attorney experienced in personal injury law and only filed a summons with notice so as to preserve his rights. Respondent stated that another attorney took over complainant's case in or about January 1995 and he sent him the case file. Although he claimed that he sent a letter to the defense attorney and complainant informing them of the change of attorneys, complainant testified he never received such a letter. Although the consent-to-change attorney forms were only signed by him, respondent claims that at some point he had the originals which were signed by all parties, but he had given them to complainant. He admitted that in October 1996 he had requested an adjournment of the dismissal motion, but explained that he was not the complainant's attorney and only represented himself as such for "convenience."

Respondent admitted that he had signed a stipulation of adjournment as complainant's attorney and that there was nothing in the court file that indicated that another attorney had been substituted. In his answer to the formal charges respondent stated that he had complainant's file in storage. In explaining the apparent inconsistency of his assertion that he had given the case file to the complainant's new attorney and his representation that he had the file in storage nearly two years after he supposedly had given it to him, respondent testified that he had a few "pieces of paper" in storage. He later stated that he just meant that he had the "file jacket" in storage without any documents.

With respect to his dealings with the second attorney retained by the complainant, respondent claimed he replied in a letter, dated April 1, 1997, but both complainant and the at-

torney denied ever receiving this reply letter. Although respondent testified that he never received any of the attorney's letters sent to him at 300 Madison Avenue, his April 1, 1997 letter states that it is written in response to the attorney's February 11, 1997 letter, which was addressed to 300 Madison Avenue.

The Referee sustained the first charge, finding that respondent violated Code of Professional Responsibility DR 6-101 (a) (3) (22 NYCRR 1200.30 [neglect of a matter entrusted to the attorney]), by failing to prosecute his client's personal injury case for more than four years; by failing to inform him about the status of his case despite numerous inquiries; by failing to file a complaint in the case; and by failing to respond to the dismissal motion. This neglect caused complainant's case to be permanently dismissed because a dismissal pursuant to CPLR 3012 (b) does not toll the Statute of Limitations.

With respect to the second charge, the Referee found that respondent violated DR 9-102 (c) (4) (22 NYCRR 1200.46 [failure to return client property in his possession promptly when so asked]) by intentionally failing to return his client's file despite receiving repeated requests from complainant's new lawyer. In making this finding, the Referee also found that respondent was complainant's attorney to the end of the case and that he had the file in his possession in storage. The Referee also found that respondent violated DR 1-102 (a) (5) (22 NYCRR 1200.3) by engaging in conduct prejudicial to the administration of justice insofar as he failed to cooperate with the Committee's investigation of the complaint. In particular, the Referee found respondent violated this rule by failing to answer the disciplinary complaint for almost a year and by not complying with the subpoena duces tecum, which required him to produce the case file, and to appear for a deposition.

Finally, with regard to the fourth charge, the Referee determined that respondent's assertion of "non-credible" defenses during the hearing "instead of taking responsibility for his wrongdoing," his misconduct in representing the complainant, and the irreparable harm he caused the case, adversely reflected on his fitness to practice law in violation of DR 1-102 (a) (7).

On the issue of an appropriate sanction, the Referee found that respondent had been admonished in 1995 for using his attorney escrow account as a business operating account in violation of DR 1-102 (a) (8) (now [7]), for failing to maintain proper records for the account in violation of DR 9-102 (d), for issuing

checks to "cash" from said account in violation of DR 9-102 (e), and for failing to record the purpose of the "cash" withdrawals in violation of DR 9-102 (d). In addition, the Referee found that respondent violated a directive contained in the admonition by failing to timely submit to the Committee a written report explaining how he had changed his law office procedures to comply with DR 9-102. In mitigation, respondent testified to various community activities in which he has participated, primarily involving donations to charity, *pro bono* work, and providing multilingual radio programs to ethnic communities.

A period of suspension is usually imposed on an attorney who has neglected a legal matter and has been previously disciplined (*Matter of Kovitz*, 118 AD2d 285 [one-year suspension for neglect of legal matter and four prior admonitions]), or has engaged in misconduct in addition to the neglect (*Matter of Danas*, 236 AD2d 44, 46, citing *Matter of Cofino*, 211 AD2d 298). Here, the Referee noted that although respondent only neglected one legal matter, he neglected it for four years, ultimately causing its permanent dismissal, he failed to turn over the client's file to his new attorney, and he failed to cooperate with the Committee's investigation. As additional aggravation, the Referee found respondent was untruthful during his testimony regarding his denial of receipt of the second attorney's letter and by his attempt to deceive the Committee as to whether he possessed complainant's files. Accordingly, the Referee balanced the misconduct, the serious aggravating circumstances, and respondent's failure to accept responsibility against "the minimal mitigation offered by respondent," and recommended that respondent be suspended for one year.

As noted previously, three out of four Hearing Panel members recommended confirming the Referee's findings of fact and recommendation in his "well reasoned" report. The dissenting member concurred with the facts as found by the Referee, but recommended a suspension of three years or indefinitely, *inter alia*, because respondent was not candid with the Panel during oral argument; that he "consistently displayed an utter disregard of the Committee, ignoring its communications"; and his habitual lateness.

The Departmental Disciplinary Committee now moves pursuant to 22 NYCRR 603.4 (d) and 605.15 (e) (2) to confirm the findings of fact and conclusions of law of the Referee and the determination of the Hearing Panel and suspending respondent from the practice of law for one year, or, alternatively, for more than one year. The Committee argues that respondent

should be suspended for at least one year based upon his neglect of a legal matter, his false testimony before the Committee, his continued lack of candor, his previous admonition and in view of his weak and unsubstantiated evidence in mitigation. Respondent has not responded to this motion.

There is no question that the findings of facts and conclusions of law should be confirmed inasmuch as the evidence presented established the four charges of professional misconduct by respondent. The only issue is the appropriate length for respondent's suspension where he engaged in neglect of a legal matter leading to the permanent dismissal of the action which he concealed, aggravated by a prior disciplinary record and his false testimony during the hearing.

"[I]n cases where the neglect [of legal matters] has been combined with misrepresentation of the status of the case to the client or lack of candor before the Committee, the term of suspension has generally been longer than one year" (*Matter of Siegel*, 193 AD2d 181, 185 [attorney suspended for three years for, *inter alia*, neglecting four legal matters for substantial period of time, for misrepresenting status of case and where he received three prior admonitions]; *see also Matter of Rabinowitz*, 189 AD2d 402, *lv denied* 82 NY2d 653 [three-year suspension for neglecting two matters, misrepresenting status of case, and previously admonished on six occasions]; *see Matter of Pravda*, 96 AD2d 34, *mod upon rearg* 101 AD2d 80 [two-year suspension imposed on attorney who neglected two legal matters, misled both clients as to status of the case, and had been previously admonished and censured]; *compare, Matter of Jaffe*, 250 AD2d 13 [neglect of a legal matter, misrepresentation of status of matter to both client and Committee and where two prior admonitions, attorney suspended for three months]).

While the above cited cases, except for *Jaffe*, involved more than one legal matter, here there was a pattern of neglect as manifested in respondent's continued failure to cooperate in the Committee's investigation. Indeed, respondent's persistent dilatory conduct with respect to the Committee's investigation was found so egregious that the Referee in the first hearing recommended disbarring respondent. In any event, respondent's default on this application, his disciplinary history, his false testimony before the Referee and his lack of remorse, aggravated respondent's misconduct. Therefore, although we consider a three-year suspension, as suggested by the dissenting member of the Hearing Panel, too long, we deem an 18-month suspension more appropriate, particularly in light of

respondent's dishonesty before the Referee and the Hearing Panel and the lack of any substantiated mitigation (*see Matter of Lampert*, 142 AD2d 66 [neglect by respondent of four matters, misrepresentation of status of the matters to the clients and a prior admonition resulted in a two-year suspension]).

Accordingly, the Committee's petition should be granted to the extent of confirming the Hearing Panel and Referee's findings of fact and conclusions of law and insofar as they recommend suspension of respondent from the practice of law. However, the recommended sanction of a one-year suspension should be disaffirmed and respondent suspended from the practice of law for a period of 18 months and until further order of this Court.

TOM, J. P., ANDRIAS, SAXE, BUCKLEY and FRIEDMAN, JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of 18 months, effective July 30, 2001, and until the further order of this Court.